DEFENDANT'S COPY                    DEFENDANT'S COPY

**SUMMONS**                                      R.D. NO. 70633

## STATE OF TENNESSEE
## IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE

TO:   Midland National Life Insurance Company
      c/o Commissioner of Insurance
      500 James Robertson Parkway
      Nashville, TN 37243



You are summoned to appear and defend a civil action filed against you entitled:

### REGINALD PUGH
### v.
### MIDLAND NATIONAL LIFE INSURANCE COMPANY

which has been filed in Chancery Court, Madison County, Tennessee, and your defense must be made within thirty (30) days from that date this summons is served upon you. You are further directed to file your defense with the Clerk of the court and send a copy to **Chad A. Naffziger, Gilbert Russell McWherter PLC**, Plaintiffs' Attorney, whose address is **101 North Highland, Jackson, TN 38301**. In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

ISSUED: _May 22_, 2013.

CLERK AND MASTER,
PAM CARTER, CLERK & MASTER

By: _____
        Deputy Clerk & Master

---

### RETURN OF SERVICE

I hereby certify and return, that on the _____ day of _____, 2013,
I served this summons together with a copy of the complaint herein as follows: _____

_____

_____

_____

_____
Sheriff

_____
Deputy Sheriff

**EXHIBIT**
**A**

DEFENDANT'S COPY      JUN 1 0 2013      DEFENDANT'S COPY

## IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE

REGINALD PUGH,

        Plaintiff,

v.

MIDLAND NATIONAL LIFE
INSURANCE COMPANY,

        Defendant.

FILED

TIME: 9:30 A.M. _____ P.M.  Case No. 70633

MAY 2 2 2013

PAM CARTER
CLERK & MASTER

BY: _____
DEPUTY CLERK

### COMPLAINT

COMES NOW the Plaintiff, Reginald Pugh (hereafter "Pugh"), by and through counsel and for his claims against the Defendant, Midland National Life Insurance Company (hereafter "Defendant"), would respectfully state and show unto the Court as follows:

### I.    PARTIES AND JURISDICTION

1. The Plaintiff, Reginald Pugh, is a resident of the State of Georgia. At the time Pugh entered into the contract at issue in this case, he was a resident of Madison County, Tennessee. Further, the contract at issue was executed in Jackson, Madison County, Tennessee.

2. Defendant, Midland National Life Insurance Company is a foreign corporation engaged in the business of insurance in the State of Tennessee.

3. Jurisdiction and venue are proper in this Court pursuant to Tenn. Code Ann. §§ 16-11-102 and 16-11-114.

### II.    FACTS

4. To obtain a life insurance policy on the life of his sister, Brenda Pugh, Reginald Pugh met with Charles Buchanan, an agent of Defendant, at Buchanan's office in April of 1991.

JUN 1 0 2013

5.      At that time, Pugh applied for life insurance policies on the lives of his mother, Martha Pugh and sisters, Paula and Brenda Pugh. Pugh requested that Buchanan name Reginald Pugh as the owner and beneficiary of all three policies. Reginald Pugh was also named beneficiary on all three policies.

6.      Buchanan submitted three separate applications for the three separate policies on April 2, 1991 to Defendant.

7.      Defendant approved all three policies on April 11, 1991 and issued the policies.

8.      In 2011, Brenda Pugh was diagnosed with cancer. She passed on June 18, 2012.

9.      The policy on the life of Brenda Pugh was for $35,000.00 and bore Policy No. 1695382 (hereafter the "Policy").

10.     Following Brenda Pugh's death, Reginald Pugh made a claim for the benefits of the life insurance policy. He was advised by Defendant that the Policy had expired.

11.     Approximately ten (10) months prior to Brenda Pugh's death, Reginald Pugh switched bank accounts. He had previously had the insurance premiums on all three policies automatically withdrawn through electronic fund transfers on a monthly basis. Pugh consistently contacted Defendant regarding all three policies during this ten (10) month time period in order to make payments on all three policies from his new bank via electronic fund transfers as he had done in the past.

12.     Defendant refused to talk to Pugh regarding the policies on his mother and sister even though he had made premium payments faithfully for the past twenty-one (21) years. Defendant did so on the basis that Pugh was not the owner of the Policy.

13.     Defendant contends that throughout 2011, they attempted to contact Brenda Pugh in Grand Junction, Tennessee regarding the expiration of the Policy. However, she was living

JUN 1 0 2013

with her daughter in Memphis due to her cancer. Reginald Pugh attempted to advise Defendant of this on numerous occasions, but again, Defendant would not respond or speak with Pugh.

14.     Not until April 11, 2012 did Defendant send Pugh an electronic fund transfer form to be completed. This was actually sent in relation to the Policy (#1502050743) on his mother, Martha Pugh. Please see attached **Exhibit A**.

15.     Pugh submitted the electronic fund transfer form to Defendant on April 20, 2012 for all three policies. Please see attached **Exhibit B**.

16.     At this time, Defendant accepted the premiums for the insurance policies on the lives of Martha Pugh and Paula Pugh. Defendant refused to accept the premiums on Brenda Pugh's life insurance policy, at a time when they knew she was terminally ill with cancer.

17.     One basis for Defendant's refusal to speak to Pugh or accept premium payments is that he was not the owner of the Policy. This was not the intention of Reginald Pugh or Charles Buchanan at the time the applications on all three policies were submitted. Charles Buchanan, Defendant's agent, has admitted that "through an error and omission I did not indicate Mr. Reginald Pugh as the owner, which is corrected at this time. He [Reginald Pugh] is also the primary beneficiary." Please see attached **Exhibit C**.

18.     To obtain the Policy on the life of Brenda Pugh, Charles Buchanan completed the application on behalf of Reginald Pugh and submitted it to Defendant. Reginald Pugh was intended to be the owner of the Policy. As such, Defendant is bound by the knowledge of its agents, particularly Charles Buchanan.

19.     Charles Buchanan was an authorized agent of Defendant, and Defendant may be held vicariously liable for the wrongful acts of Charles Buchanan.

JUN 1 0 2013

20.     Pursuant to Tenn. Code Ann. § 56-6-115(b), "an insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary."   The purpose of Tenn. Code Ann. § 56-6-115(b) is to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted and to protect an applicant who relies on such representations and actions of the insurer's agent.   The statute is liberally construed in the insured's favor.   *Bill Brown Construction Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991).

21.     Charles Buchanan was an insurance producer who solicited and negotiated the application for insurance as Defendant's agent under Tenn. Code Ann. § 56-6-115(b).

22.     At all times material hereto, Defendant employed certain individuals, including but not limited to Charles Buchanan, for the purposes of soliciting insurance products, collecting premiums, receiving applications, binding coverage, etc.

23.     Charles Buchanan had Defendant's authority to receive applications for, and on behalf of, Defendant.

24.     Pugh and Defendant/Charles Buchanan were in a contractual relationship as customers and service/insurance provider, in which Defendant/Charles Buchanan agreed to provide Pugh with professional services and adequate and appropriate insurance coverage. Pugh, in turn, promised to pay for such services and coverage.

25.     The knowledge of Charles Buchanan is imputed to Defendant.   Further, the mistakes and negligence of Charles Buchanan are attributable to his principal, Defendant.

JUN 1 0 2013

Because Charles Buchanan acted within the scope of his authority and filled out an application for insurance and placed Brenda Pugh as the owner of the Policy rather than Reginald Pugh as agreed upon by Pugh and Buchanan, and without the knowledge, participation, or collusion of Pugh, then Charles Buchanan's acts, mistakes, and representations in the application are deemed to be those of his principal, Defendant. Defendant cannot void the insurance policy and avoid liability based on mistakes and misrepresentations made by its own agent, Charles Buchanan.

26.     Pugh believes and would show to the Court that he justifiably relied upon the representations of Defendant's agent, Charles Buchanan, concerning coverage of the life of his sister, Brenda Pugh, and as a direct and proximate cause of such representation, has now suffered damages.

27.     Defendant's refusal to honor its contractual commitment to pay Pugh the proceeds of the Policy, has caused Pugh to seek legal counsel and to initiate this Complaint to recover the insurance benefits to which he would have otherwise been entitled.

28.     As a direct and proximate cause of Defendants' actions/inactions, Pugh has sustained substantial compensable losses, including all benefits due Pugh under the Policy, and other numerous and assorted incidental and consequential damages.

### III.     CAUSES OF ACTION

**Count I– Breach of Contract**

29.     The allegations contained in paragraphs 1 through 28 of this Complaint are incorporated by reference as if set forth verbatim herein.

30.     Defendants are liable to Pugh for breach of contract. The Policy was a valid and binding agreement supported by consideration and Pugh made and or attempted to make all payments as required by the policy.

JUN 1 0 2013

31.     Breach of Contract No. 1 - Pugh contracted with Defendant to provide insurance on the life of his sister, Brenda Pugh.  Although Charles Buchanan did in fact obtain Pugh a policy of insurance with Defendant, Pugh's claims have been denied and the Policy rescinded as a result of Charles Buchanan's completion and submission of the application.  Defendant is in total, material breach of its contract with Pugh to procure appropriate insurance coverage for the benefit of Pugh, for which valuable consideration was paid.

32.     Breach of Contract No. 2.  Defendant is also liable to Pugh for its breach of the Policy in that Defendant refuses to pay Pugh the face value of the Policy.

33.     Any contractual provision in a policy of insurance may be waived by an officer or agent of the insurer who has actual or apparent authority to do so.  It is firmly established in Tennessee jurisprudence that an insurance company, by its agent's conduct, may be estopped to deny a waiver of provisions inserted in an insurance policy for the benefit of the company.  In this case, the application submitted by Charles Buchanan led to Pugh's claims being denied through the mistake or negligence of Defendant, not any misrepresentation by Pugh.  Further, Defendant accepted premiums paid by Pugh pursuant to the Policy for twenty-one (21) years prior to refusing to accept premiums or communicate with him after switching bank accounts.

34.     Pugh relied on the representations and promises of Defendant concerning the nature of the insurance coverage being provided.  Defendant knew that its representations concerning the coverage would induce Pugh to rely on such representations.  Injustice can only be avoided by enforcement of the representations and agreement that coverage would be afforded to Pugh through the Policy.

JUN 1 0 2013

35.     Defendant waived the right to deny Pugh's claims through the acts, representations, and knowledge of Defendant, and therefore has breached the Policy by denying that it is responsible to pay Pugh the face value of the policy.

36.     As a result of Defendant's breach of contract, Pugh has suffered monetary losses, and other numerous incidental and consequential damages, for which Defendant is liable.

### Count II - Statutory Bad Faith

37.     The allegations contained in paragraphs 1 through 36 of this Complaint are incorporated by reference as if set forth verbatim herein.

38.     Defendant's failure to pay the amounts contractually owed to Pugh is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.  A copy of the notice required by Tenn. Code Ann. § 56-7-105 is attached hereto as **Exhibit D.**

39.     The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Pugh was justifiably relying on the money and benefits due him under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 40 below. Nevertheless, acting with conscious disregard for Pugh' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Pugh, Defendant consciously ignored Pugh's valid claim, denied Pugh's claim, and withheld monies and benefits rightfully due Pugh.

JUN 1 0 2013

40.   Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

    a.   Defendant's failure to fully inform Pugh of his rights and obligations under the Policy;

    b.   Defendant's failure to affirm or deny Pugh's claim within a reasonable period after his claim was submitted;

    c.   Defendant's failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Pugh's claim when liability was reasonably clear;

    d.   Defendant's refusal to pay Pugh's claim without conducting a reasonable investigation based on all available information;

    e.   Defendant's refusal to fully investigate Pugh's claim and obtain all available information before denying his claim;

    f.   Defendant's engaging in acts and practices toward Pugh that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Pugh;

    g.   Defendant's reckless and/or grossly negligent failure to properly pay Pugh fully for his losses;

    h.   Defendant's failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

    i.   Defendant's unjustified refusal to pay Pugh's claim for its own financial preservation;

JUN 3 0 2013

j.  Defendant's accusation that Pugh made misrepresentations on his application without ever even questioning Pugh or Charles Buchanan regarding the application and without conducting a reasonable investigation; and

k.  Defendant's refusal to communicate with Pugh or accept premiums from Pugh on the Policy after Pugh switched bank accounts.

l.  Defendant's refusal to accept additional premium payments based on Defendant's improper motive of seeking to avoid its contractual obligations under the Policy after accepting premiums for over twenty years.

41.  In so acting, Defendant intended to and did injure Pugh in order to protect its own financial interests, and should be punished via the twenty-five (25%) bad faith penalty as authorized by statute.

## Count III – Common Law Bad Faith

42.  The allegations contained in paragraphs 1 through 41 of this Complaint are incorporated by reference as if set forth verbatim herein.

43.  Pugh alleges that Defendant is liable to him as a result of Defendant's bad faith in the handling, and ultimate denial, of Pugh's claim resulting from the death of his sister Brenda Pugh.

44.  Defendant issued a policy of insurance to Pugh and Pugh made a lawful, reasonable claim under the Policy.

45.  Defendant intentionally refused to pay Pugh's claim.

46.  Defendant had no reasonably legitimate or arguable reason for its refusal to pay the claim.

JUN 1 0 2013

47.     Defendant had actual knowledge of the absence of a reasonably legitimate, debatable or arguable reason for the refusal to pay.

48.     Defendant intentionally failed to determine whether it had a reasonably legitimate or arguable reason for refusing to pay Pugh's claim.

49.     Defendant has a duty to act in good faith when handling the claims of its insureds, including the claim filed by Pugh as a result of the death of his sister, Brenda Pugh. Defendant's bad faith refusal to pay the instant insurance claim is a breach of that duty and imposes tort liability.

50.     Defendant breached its duty to handle Pugh's claim in good faith, in that its denial of Pugh's claim was not predicated upon circumstances that furnished reasonable justification therefore.

51.     Pugh's bad faith is further evidenced by all the facts and allegations set forth in paragraphs 37-41 of this Complaint, all of which are incorporated herein by reference.

52.     Defendant's conduct was intentional, fraudulent, malicious, or reckless, therefore justifying an award of punitive damages.

### Count IV - Negligence And/or Negligent Misrepresentation

53.     The allegations contained in paragraphs 1-52 of this Complaint are incorporated by reference as if set forth verbatim herein.

54.     Defendants is liable to Pugh for negligence and/or negligent misrepresentation.

55.     Charles Buchanan provided insurance agent services to Pugh. Pugh looked to Charles Buchanan to obtain the insurance coverage he sought and needed to ensure on the life of his sister, Brenda Pugh. Pugh expected that he was being provided insurance coverage by a sound company who could and would properly and promptly pay and honor claims if and when

JUN 1 0 2013

they were made. It was Charles Buchanan's duty to keep Pugh, and Defendant, fully informed and advised so that the life of Brenda Pugh was safely insured at all times. In exchange, Charles Buchanan was paid for his services.

56.     In providing the aforementioned services to Pugh, Charles Buchanan, as well as his employees/agent including, but not limited to Charles Buchanan, was acting within the ordinary course of his business as an agent of Defendant.

57.     Defendant owed Pugh a duty (1) to ensure adequate insurance coverage based on Pugh's needs and requests; (2) to counsel and guide Pugh regarding the insurance application; (3) to confer with Pugh in completing the insurance application; (4) to allow Pugh to review the application before it is submitted; (5) to act with reasonable care and diligence in securing insurance coverage for Pugh; (6) to incorporate all information requested by Pugh that was provided to Charles Buchanan into the application; and (7) to act as a reasonably prudent insurance agent. It is the universal rule that an agent or broker of insurance who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting.

58.     Defendant is liable for the actions/inactions of its agents, which Buchanan was.

59.     Defendant breached each of the above duties.

60.     Defendant promised to provide Pugh coverage on the life of Brenda Pugh, and Pugh justifiably and reasonably relied on Defendant's representations, skill, and expertise to his detriment.

61.     Additionally, Defendant was negligent in failing to adequately train and supervise its employees/agents. Specifically, Defendant was negligent in failing to adequately train and

JUN 1 0 2013

supervise Charles Buchanan and any other agents involved in the procurement of the policy at issue.

62.     Defendant's negligence was the cause-in-fact, legal, and proximate cause of Pugh's damages.

63.     As a result of Defendant's negligence and/or negligent misrepresentation, Pugh has suffered substantial damages.

WHEREFORE, as a result of the foregoing, Pugh would respectfully request that this Honorable Court award a judgment against Defendant as follows:

A.     For compensatory damages not to exceed $100,000.00;

B.     For punitive damages not to exceed nine (9) times Pugh's compensatory damages, or $900,000.00;

C.     For all costs incurred by Pugh as a result of this action;

D.     For a bad faith penalty of an additional twenty-five percent (25%) added to Pugh's claim as authorized by statute;

E.     For pre- and post-judgment interest; and

F.     For such other further and general relief as this Court deems just and equitable.

JUN 1 0 2013

Respectfully submitted,

GILBERT RUSSELL MCWHERTER PLC

J. BRANDON MCWHERTER #21600
CLINTON H. SCOTT #23008
CHAD A. NAFFZIGER #26880
*Attorneys for Plaintiff*
101 N. Highland Ave.
Jackson, Tennessee 38301
(731) 664-1340
(731) 664-1540 *Facsimile*

## COST BOND

We stand as sureties for costs in this cause.

GILBERT RUSSELL McWHERTER PLC

JUN 1 0 2013

# EXHIBIT A



FILED

TIME: 9:30 A.M. _____ P.M.

MAY 2 2 2013

PAM CARTER
CLERK & MASTER

BY: _____
DEPUTY CLERK

**MIDLAND NATIONAL**®
Life Insurance Company

April 11, 2012                                   JUN 1 0 2013

REGINALD PUGH
325 JEFFERSON DR
COLUMBUS GA  31907


RE:  Policy Number 1502050743



Dear Policyowner:

Thank you for allowing Midland National to be your life insurance
provider.  We appreciate the opportunity to provide you with some
additional information about our Electronic Fund Transfer plan to pay
policy premiums.

On the reverse side of this letter you will find an authorization form for
you to complete, sign and return to us. Please include a voided check, not
a deposit slip. Often times deposit slips do not contain the account number
information needed to set up drafting from a checking account.

If you would like your withdrawal on a specific day of the month, please
indicate this on the form. If a date is not requested, we will withdraw on
the policy "month-iversary" (each month on the same date on which your
policy was issued).

We value our relationship and will continue to provide the high quality
services you desire...and deserve. If we can assist further, including any
other life insurance or annuity needs you may have, please contact us at
Extension 32260. You may also access our website, www.mnlife.com 24 hours a
day for additional information. Thank you for your business.

Sincerely,

Client Communications



cc: AGENT - You may contact us at - PHONE NUMBER: (605)373-2260


281

MIDLAND NATIONAL LIFE INSURANCE COMPANY
ONE SAMMONS PLAZA ● SIOUX FALLS, SD 57193
PHONE: (605) 335 5700 ● FAX: (877) 208 6126 ● WWW.MNLIFE.COM

# EXHIBIT B

JUN 1 0 2013

FILED

TIME: 9:30 A.M. _____ P.M.

MAY 2 2 2013

PAM CARTER
CLERK & MASTER

BY: _____
DEPUTY CLERK

JUN 1 0 2013



**MIDLAND NATIONAL**
Life Insurance Company
*A Member of the Sammons Financial Group*

CO

## ELECTRONIC FUND TRANSFER FORM
### (Please Complete The Entire Form)

| INSURED NAME | | | M.I. | POLICY NUMBER |
|---|---|---|---|---|
| | *PUGH* LAST | *MARTHA* FIRST | | *02050743* |
| 2nd INSURED NAME | *PUGH* LAST | *PAULA* FIRST | *R.* M.I. | POLICY NUMBER *02125261* |
| 3rd INSURED NAME | *PUGH* LAST | *BRENDA* FIRST | *J.* M.I. | POLICY NUMBER *0795382* |
| 4th INSURED NAME | LAST | FIRST | M.I. | POLICY NUMBER |
| 5th INSURED NAME | LAST | FIRST | M.I. | POLICY NUMBER |

| ADDRESS CHANGE | NEW ADDRESS: |
|---|---|
| | Phone Number: ( ) |

| ACCOUNT TYPE | | WITHDRAWALS SHOULD START ON: | | NOTE: We need 3 days notification to stop current bank withdrawals. |
|---|---|---|---|---|
| (CHECKING) | SAVINGS | *June* Month | 1st – 28th *1st* Day *2012* Year | |
| (Attach voided check) | | | | |

ROUTING NUMBER  *061 000 227*          ACCOUNT NUMBER  *5586815077*

FINANCIAL INSTITUTION NAME AND ADDRESS
*Wells Fargo Bank, N.A. Georgia*

As a convenience to me (us), I (we) request and authorize Midland National Life Insurance Company ("the Company") to obtain payment of amounts becoming due the company by initiating charges to my (our) account in the form of checks, drafts, share drafts or electronic debit entries, and I (we) request and authorize the financial institution named above to accept and honor the same and charge the same to my (our) account. This Authorization will remain in effect until I (we) notify the Company or financial institution in writing to terminate and the Company or the financial institution has a reasonable time to act on the termination. I (we) hereby terminate any prior Authorization of the Company to charge this account, effective the date on which the first charge is initiated by the Company under this Authorization. I (we) understand that I (we) may stop payment of any charge by notifying the financial institution before my (our) account is charged, and I (we) may have the amount of an erroneous electronic debit entry immediately credited to my (our) account with 15 days after issuance of my (our) statement of 45 days after posting, whichever occurs first. This Authorization will become effective only upon acceptance by the Company at the address shown below.

| DEPOSITOR NAME (PLEASE PRINT) *Reginald L. Pugh* | JOINT DEPOSITOR NAME (PLEASE PRINT) | |
|---|---|---|
| DEPOSITOR SIGNATURE *R. L. Pugh* | JOINT DEPOSITOR SIGNATURE | DATE *4-20-12* |

---

| REGINALD L PUGH (LTC RETIRED) 328 JEFFERSON DR COLUMBUS, GA 31907-6121 | | 232 |
|---|---|---|
| | | 64-22/810 8086 5586815077 |
| PAY TO THE ORDER OF | *VOID* | DATE _____ $ |
| | | DOLLARS 🔒 |
| WELLS FARGO | Wells Fargo Bank, N.A. Georgia wellsfargo.com | |
| FOR _____ | | MP _____ |

⑆061000227⑆ 5586815077⑆ 00232

MIDLAND NATIONAL LIFE INSURANCE COMPANY • ONE SAMMONS PLAZA • SIOUX FALLS, SD 57193
Phone: (605) 335-5700 • Fax: (877) 208-6136 • Internet: www.mnlife.com          Rev. 11/10

# EXHIBIT C

JUN 1 0 2013

FILED

TIME: 9:30 A.M. ........ P.M.

MAY 27 ....

PAM CARTER
CLERK & MASTER

BY: _____
DEPUTY CLERK

206:07p

J6/19/2012  19:36    7319608030           KINKOS

JUN 1 0 2013       p.8
PAGE  01/01

*From the desk of:*

# Charles Buchanan

June 22, 2012

TO WHOM IT MAY CONCERN:

Please accept this letter to verify that I, Charles  D
Buchanan, representing Midland National Life Insurance Co,
sold a life insurance policy to Mr. Reginald Pugh on the
insured Brenda Pugh some 20 plus years ago.
However through an error and omission  I did not indicate
Mr. Reginald Pugh as the owner, which is corrected at this
time. He is also listed as the Primary beneficiary.
The policy number is 1695383.

                    Sincerely,

                    *Charles D. Buchanan*
                    Charles D. Buchanan

                                                        *End 1*

JUN 1 0 2013

# EXHIBIT D

FILED

TIME: 9:30 A.M. _____ P.M.

MAY 2 2 2013

PAM CARTER
CLERK & MASTER

BY:_____

DEPUTY CLERK

JUN 10 2013

# ||| GILBERT RUSSELL McWHERTER PLC

101 N. Highland   Jackson, TN 38301  731.664.1340 (T)  731.664.1540 (F)

February 1, 2013

Midland National Life Insurance                          *Certified Mail/Return Receipt*
Attn: Claims Manager
One Sammons Plaza
Sioux Falls, SD  57193

     Re:    Insured: Brenda Pugh/Reginald Pugh
           Policy No.: 1501695382
           Date of Death: June 18, 2012
           Our File No. 2298-1

Dear Sir or Madame:

     This letter will serve for purposes of making a formal demand for payment as authorized pursuant to Tenn. Code Ann. § 56-7-105.  In that regard, Reginald Pugh, beneficiary of the above referenced policy, hereby gives formal demand that the insurance policy issued by you on the life of Brenda Pugh be paid in full and/or otherwise honored.  This demand is being made so that Midland National Life Insurance Company has an opportunity to investigate and/or reconsider the claim; to give notice of our intent to assert a bad faith claim if it is not paid in full; and to memorialize the fact that after sixty (60) days have expired from receipt of this notice, that a lawsuit will be filed to enforce the insurance contract at issue, plus damages for bad faith as authorized by statute.  As such, please respond accordingly.

               Yours very truly,

               GILBERT RUSSELL McWHERTER PLC

               Chad A. Naffziger

CAN/cs