**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

**REGINALD PUGH,**

    **Plaintiff,**

**v.**                                           No. 1:13-cv-01203-JDB-egb

**MIDLAND NATIONAL LIFE**
**INSURANCE COMPANY,**

    **Defendant.**

---

**AMENDED COMPLAINT**

---

COMES NOW the Plaintiff, Reginald Pugh (hereafter "Pugh"), by and through counsel and for his claims against the Defendant, Midland National Life Insurance Company (hereafter "Defendant"), would respectfully state and show unto the Court as follows:

### I.    PARTIES AND JURISDICTION

1. The Plaintiff, Reginald Pugh (hereinafter "Pugh" or "Plaintiff"), is a resident of the State of Georgia. At the time Pugh entered into the contract at issue in this case, he was a resident of Madison County, Tennessee. Further, the contract at issue was executed in Jackson, Madison County, Tennessee.

2. Defendant, Midland National Life Insurance Company (hereinafter "Defendant"), is a foreign corporation engaged in the business of insurance in the State of Tennessee.

3. Jurisdiction and venue are proper in the Chancery Court of Madison County pursuant to Tenn. Code Ann. §§ 16-11-102 and 16-11-114 and improper in United States District

Court under diversity jurisdiction, based on the relief sough in this Amended Complaint, because the amount in controversy does not exceed $75,000.00.

## II.   FACTS

4. In April of 1991, Plaintiff met with Charles Buchanan (hereinafter "Buchanan"), an agent for Defendant, to obtain a life insurance policy on the lives of Martha Pugh (mother), Paula Pugh (sister), and Brenda Pugh (sister). The meeting took place at the office of Buchanan located in Jackson, Tennessee.

5. At or about the same time, Pugh applied for the aforementioned life insurance policies. In doing so, Pugh requested that Buchanan name Plaintiff as the owner and beneficiary of all three policies.

6. On April 2, 1991, Buchanan completed and submitted three separate life insurance applications to Defendant: Martha Pugh policy application, Paula Pugh policy application, and Brenda Pugh policy application.

7. Defendant approved all three policies on April 11, 1991 and issued the policies.

8. The policy on the life of Brenda Pugh was for $35,000.00 and bore Policy No. 1695382 (hereinafter the "Policy"). Please see attached **Exhibit A**.

9. Pugh made and/or attempted to make all premium payments with regard to the Policy at all times material hereto.

10. For approximately twenty-one (21) years, Plaintiff made all premium payments to Defendant with regard to the Policy.

11. In 2011, Brenda Pugh (sister) was diagnosed with cancer. She passed on June 18, 2012.

12. Approximately ten (10) months prior to Brenda Pugh's death, Reginald Pugh switched bank accounts. He previously had the insurance premiums on all three policies automatically withdrawn through electronic fund transfers on a monthly basis.

13. After switching bank accounts and for the ten (10) month time period proceeding the death of his sister, Brenda Pugh, Plaintiff repeatedly contacted Defendant regarding all three policies in order to make premium payments on all three policies from his new bank via electronic fund transfers, as he had done in the past. At all times material hereto, Plaintiff stood ready and willing to pay all premiums with regard to the Policy.

14. Despite his attempts to pay all premiums due and owing on the Policy, Defendant refused to talk to Pugh regarding the Policy, even though he had made premium payments faithfully for the past twenty-one (21) years. Defendant allegedly did so on the basis that Pugh was not the owner of the Policy.

15. On April 11, 2012, Defendant finally sent Pugh an electronic fund transfer form to be completed. The form was actually sent in relation to the Policy (#1502050743) on his mother, Martha Pugh. Please see attached **Exhibit B**.

16. Pugh submitted the electronic fund transfer form to Defendant on April 20, 2012 for all three policies. Please see attached **Exhibit C.**

17. Defendant accepted the updated electronic fund transfer form and premiums for the insurance policies on the lives of Martha Pugh and Paula Pugh. Defendant, however, wrongfully refused to accept the premiums on the Policy, at a time when they knew she was terminally ill with cancer.

18. One basis asserted by Defendant for its refusal to speak to Pugh or accept premium payments was that he was not the owner of the Policy. This, however, was not the

intention of Plaintiff or Buchanan at the time the application on the Policy was submitted. Buchanan, Defendant's agent, has admitted that "through an error and omission I did not indicate Mr. Reginald Pugh as the owner, which is corrected at this time. He [Reginald Pugh] is also the primary beneficiary." Please see attached **Exhibit D**.

19. Following Brenda Pugh's death, Pugh made a claim for benefits under the Policy. He was advised by Defendant that the Policy had expired, and Defendant refused to make payment.

20. Defendant contended that throughout 2011, attempts had been made to contact Brenda Pugh in Grand Junction, Tennessee regarding the expiration of the Policy. However, she was living with her daughter in Memphis due to her cancer. Pugh attempted to advise Defendant of this on numerous occasions, but again, Defendant would not respond or speak with Pugh.

21. To obtain the Policy on the life of Brenda Pugh, Buchanan completed the application and submitted it to Defendant. Pugh was intended to be the owner of the Policy. As such, Defendant is bound by the knowledge of its agents, particularly Buchanan.

22. At all times material hereto, Buchanan was an authorized agent of Defendant, and Defendant is vicariously liable for the wrongful acts of Buchanan.

23. Pursuant to Tenn. Code Ann. § 56-6-115(b), "an insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary." The purpose of Tenn. Code Ann. § 56-6-115(b) is to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted and to protect an applicant who

relies on such representations and actions of the insurer's agent. The statute is liberally construed in the insured's favor. *Bill Brown Construction Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991).

24. Buchanan was an insurance producer who solicited and negotiated the application for insurance as Defendant's agent under Tenn. Code Ann. § 56-6-115(b).

25. At all times material hereto, Defendant employed certain individuals, including but not limited to Buchanan, for the purposes of soliciting insurance products, collecting premiums, receiving applications, binding coverage, etc.

26. Buchanan had Defendant's authority to receive applications for, and on behalf of, Defendant.

27. Pugh and Defendant/Buchanan were in a contractual relationship as customer and service/insurance provider, in which Defendant/Buchanan agreed to provide Pugh with professional services and adequate and appropriate insurance coverage. Pugh, in turn, promised to pay for such services and coverage.

28. The knowledge of Buchanan is imputed to Defendant. Further, the mistakes and negligence of Buchanan are attributable to his principal, Defendant. Because Buchanan acted within the scope of his authority and filled out an application for insurance and placed Brenda Pugh as the owner of the Policy, rather than Reginald Pugh, as intended and agreed upon by Pugh and Buchanan, and without the knowledge, participation, or collusion of Pugh, Buchanan's acts, mistakes, and representations in the application are deemed to be those of his principal, Defendant. Defendant cannot void the insurance policy and avoid liability based on mistakes and misrepresentations made by its own agent, Buchanan.

29. Pugh believes and would show to the Court that he justifiably relied upon the representations of Defendant's agent, Buchanan, concerning coverage provided under the Policy, and as a direct and proximate cause of such representations, has now suffered damages.

30. Defendant's refusal to honor its contractual commitment to pay Pugh the proceeds of the Policy, has caused Pugh to seek legal counsel and to initiate this Complaint to recover the insurance benefits to which he is entitled.

31. As a direct and proximate cause of Defendants' actions/inactions, Pugh has sustained substantial compensable losses, including all benefits due Pugh under the Policy.

### III. CAUSES OF ACTION

**Count I– Breach of Contract**

32. The allegations contained in paragraphs 1 through 31 of this Complaint are incorporated by reference, as if set forth verbatim herein.

33. Defendant is liable to Pugh for breach of contract. The Policy was a valid and binding agreement supported by consideration and Pugh made and or attempted to make all payments as required by the policy.

34. Breach of Contract No. 1 - Pugh contracted with Defendant to provide insurance on the life of his sister, Brenda Pugh, under the Policy. Although Buchanan did in fact obtain Pugh a policy of insurance with Defendant, Pugh's claims have been denied and the Policy rescinded.

35. Defendant asserts that Pugh was not the owner of the Policy and on this alleged basis Defendant refused to accept premium payments from Pugh.

36. If Plaintiff was not the owner of the policy, this mistake was the result of Buchanan's completion and submission of the application. Defendant is in total, material breach

of its contract with Pugh to procure appropriate insurance coverage for the benefit of Pugh, for which valuable consideration was paid.

37. <u>Breach of Contract No. 2.</u>  Defendant is also liable to Pugh for its breach of the Policy in that Defendant refuses to pay Pugh the face value of the Policy.

38. Any contractual provision in a policy of insurance may be waived by an officer or agent of the insurer who has actual or apparent authority to do so.  It is firmly established in Tennessee jurisprudence that an insurance company, by its agent's conduct, may be estopped to deny a waiver of provisions inserted in an insurance policy for the benefit of the company.

39. In this case, the application submitted by Buchanan was allegedly the result of Pugh's claims being denied.  Any mistake or negligence in the submission of the application for the Policy was the mistake or negligence of Defendant and/or its agents, not any misrepresentation by Pugh.  Further, Defendant accepted premiums paid by Pugh pursuant to the Policy for twenty-one (21) years prior to refusing to accept premiums or communicate with him after switching bank accounts.

40. Pugh relied on the representations and promises of Defendant and Buchanan regarding the nature of the insurance coverage being provided pursuant to the Policy.

41. Defendant and Buchanan knew that their representations concerning the coverage under the Policy would induce Pugh to rely on such representations.  Injustice can only be avoided by enforcement of the representations and agreement that coverage would be afforded to Pugh through the Policy.

42. Defendant waived the right to deny Pugh's claims through the acts, representations, and knowledge of Defendant, and therefore has breached the Policy by denying that it is responsible to pay Pugh the face value of the policy.

43. As a result of Defendant's breach of contract, Pugh has suffered monetary losses, and other numerous incidental and consequential damages, for which Defendant is liable.

## Count II - Statutory Bad Faith

44. The allegations contained in paragraphs 1 through 43 of this Complaint are incorporated by reference as if set forth verbatim herein.

45. Defendant's failure to pay the amounts contractually owed to Pugh is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked. A copy of the notice required by Tenn. Code Ann. § 56-7-105 is attached hereto as **Exhibit E.**

46. The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Pugh, as the holder of the policy, was justifiably relying on the money and benefits due him under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 47 below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Pugh, Defendant consciously ignored Pugh's valid claim, denied Pugh's claim, and withheld monies and benefits rightfully due Pugh.

47. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

    a. Defendant's failure to fully inform Pugh of his rights and obligations under the Policy;

b. Defendant's failure to affirm or deny Pugh's claim within a reasonable period after his claim was submitted;

c. Defendant's failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Pugh's claim when liability was reasonably clear;

d. Defendant's refusal to pay Pugh's claim without conducting a reasonable investigation based on all available information;

e. Defendant's refusal to fully investigate Pugh's claim and obtain all available information before denying his claim;

f. Defendant's engaging in acts and practices toward Pugh that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Pugh;

g. Defendant's reckless and/or grossly negligent failure to properly pay Pugh fully for his losses;

h. Defendant's failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

i. Defendant's unjustified refusal to pay Pugh's claim for its own financial preservation;

j. Defendant's accusation that Pugh made misrepresentations on his application without ever even questioning Pugh or Charles Buchanan regarding the application and without conducting a reasonable investigation; and

k. Defendant's refusal to communicate with Pugh or accept premiums from Pugh on the Policy after Pugh switched bank accounts.

    l.    Defendant's refusal to accept additional premium payments based on Defendant's improper motive of seeking to avoid its contractual obligations under the Policy after accepting premiums for over twenty years.

48.    In so acting, Defendant intended to and did injure Pugh in order to protect its own financial interests, and should be punished via the twenty-five (25%) bad faith penalty as authorized by statute.

### Count III - Negligence And/or Negligent Misrepresentation

49.    The allegations contained in paragraphs 1-48 of this Complaint are incorporated by reference as if set forth verbatim herein.

50.    Defendant is liable to Pugh for negligence and/or negligent misrepresentation.

51.    Buchanan, as agent for Defendant, provided insurance agent services and information to Pugh. Because Buchanan was acting as an agent of Defendant at all times material hereto, Defendant is liable for the negligence of Buchanan.

52.    Pugh looked to Buchanan, as an agent for Defendant, to obtain the insurance coverage he sought on the life of his sister, Brenda Pugh. Pugh expected that he was being provided insurance coverage by a sound company who could and would properly and promptly pay and honor claims if and when they were made.

53.    It was Buchanan's duty, as an agent for Defendant, to keep Pugh, fully informed and advised so that the life of Brenda Pugh was safely insured at all times under the Policy. In exchange, Buchanan was paid for his services.

54.    In providing the aforementioned services and information to Pugh, Buchanan, as well as his employees/agents, was acting within the ordinary course of his business as an agent of Defendant.

55. Based on the assertions of Defendant that Plaintiff was not the owner of the Policy, as was communicated to Buchanan as the intent of Plaintiff, Defendant refused to accept premium payments and has refused to make payment under the Policy. Based on this assertion by Defendant, Buchanan, as an agent for Defendant, provided false information to Plaintiff regarding his ownership and ability to receive payment under the Policy.

56. Defendant/Buchanan owed Pugh a duty (1) to ensure adequate insurance coverage based on Pugh's needs and requests; (2) to counsel and guide Pugh regarding the insurance application; (3) to confer with Pugh in completing the insurance application; (4) to allow Pugh to review the application before it was submitted; (5) to act with reasonable care and diligence in securing insurance coverage for Pugh; (6) to incorporate all information requested by Pugh into the application; and (7) to act as a reasonably prudent insurance company/agent. It is the universal rule that an agent or broker of insurance who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting.

57. Defendant/Buchanan breached the aforementioned duties to Plaintiff and failed to exercise due care in doing so.

58. Defendant is liable for the actions/inactions of its agents, including Buchanan.

59. Defendant/Buchanan promised to provide Pugh coverage on the life of Brenda Pugh and that Pugh would be both the owner and the beneficiary under the Policy. Pugh justifiably and reasonably relied on the representations, skill, and expertise of Defendant/Buchanan to his detriment.

60 Additionally, Defendant was negligent in failing to adequately train and supervise its employees/agents, including Buchanan.

61. The negligence of Defendant/Buchanan was the cause-in-fact, legal, and proximate cause of Plaintiff's damages.

62. As a result of the negligence and/or negligent misrepresentations of Defendant/Buchanan, Plaintiff has suffered substantial damages.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment against Defendant as follows:

A. For compensatory damages not to exceed $35,000.00;

B. For all costs incurred by Pugh as a result of this action;

C. For a bad faith penalty of an additional twenty-five percent (25%) added to Pugh's claim as authorized by statute;

D. For pre- and post-judgment interest; and

E. For such other further and general relief as this Court deems just and equitable.

        Respectfully submitted,

        GILBERT RUSSELL MCWHERTER PLC

        s/Clinton H. Scott
        J. BRANDON MCWHERTER #21600
        CLINTON H. SCOTT #23008
        *Attorneys for Plaintiff*
        101 N. Highland Ave.
        Jackson, Tennessee 38301
        (731) 664-1340
        (731) 664-1540 *Facsimile*

## **CERTIFICATE OF SERVICE**

  I, the undersigned, do hereby certify that a true and exact copy of the foregoing has been mailed electronically via the Court's electronic filing system, to all counsel of record on this the 29th day of July, 2013.

                  s/Clinton H. Scott